UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|   |   |
|---|---|
| In re CHARLES ATWOOD FLANAGAN | No. 03:07cv1870 (MRK)<br>Bankruptcy Case No.: 99-30565 (ASD) |

## MEMORANDUM OF DECISION

This is an appeal from the Bankruptcy Court (Dabrowksi, J.) in a case that has a long and complex history. Happily, the Court need not recite that history to decide this appeal.[1] By contrast to the many issues raised during this bankruptcy, the issue presented in this appeal is a narrow one. It concerns the Bankruptcy Court's decision on the fee application of Special Counsel retained by the Chapter 7 Trustee. Despite its narrowness, the issue presented is an important one for courts and counsel.

### I.

In February 1999 Charles Atwood Flanagan filed a bankruptcy petition under Chapter 11. The case was converted to a Chapter 7 case in January 2003, and Bonnie C. Mangan was appointed the Chapter 7 trustee (the "Trustee"). In March 2003, the Trustee filed an application to employ Special Counsel, and on April 3, 2003, the Bankruptcy Court entered an order (the "Order") authorizing the Trustee to employ Special Counsel "for the following purposes:"

---

[1] The Court refers interested readers to the published decisions involving this bankruptcy. *See, e.g.*, *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171 (2d Cir. 2007); *Cadle Co. v. Mangan (In re Flanagan)*, 316 B.R. 11 (D. Conn. 2004); *Mangan v. Cadle Co. (In re Flanagan)*, 293 B.R. 102 (Bankr. D. Conn. 2003).

> The review of evidence, recovery, and defense and initiation of litigation with regard to the determination of ownership of property and the recovery of property for the estate and the recovery of improper post-petition transfers.

Appellant's Appendix [doc. # 11], at A-42. The Order further provided that "legal fees shall be a contingent fee basis of one-third (1/3) *of all amounts recovered*, and upon any appeal a contingent fee of 40% of any amount recovered." *Id.* (emphasis added). Finally, the Order excluded certain pending adversary proceedings from the scope of the Special Counsel's work.

Thereafter, the Special Counsel worked on behalf of the Trustee, and on August 17, 2007, submitted a fee application to the Bankruptcy Court seeking approval of a fee of $66,817.29 for services rendered and expenses incurred. *See id.* at A-3. The application recited that counsel had expended approximately 180 hours of time on the case and that the bankrupt estate had benefitted by approximately $290,000, consisting of Mr. Flanagan's one-half ownership interest in the Thompson & Peck insurance agency ("Thompson & Peck stock") and his interest in residential properties owned by MJCC Limited Partnership ("MJCC property"). While one-third of $290,000 was approximately $96,666.66, Special Counsel agreed to reduce his fee request to the actual time and expenses expended, which totaled $ 66,817.29. Special Counsel appended his time records to the fee application. *See id.* at A-12 to A-35.

The Bankruptcy Court held a hearing on the fee application. The Trustee supported Special Counsel's request, stating that Special Counsel had "been a great help to me throughout this case, a very difficult case, in helping me analyze very technical and complicated issues." *Id.* at A-68 (page 27). Two creditors, the Cadle Company and John C. Flanagan, opposed the fee request.

The Bankruptcy Court awarded Special Counsel $5,000 in fees and $71.02 in expenses, and it is that order that is the subject of this appeal. *See In re Flanagan*, No. 99-30565, 2007 WL

3102175 (Bankr. D. Conn. Oct. 22, 2007). In its decision, the Bankruptcy Court focused on the terms of its Order, which limited legal fees to one-third of "all amounts recovered." As the court explained, the word "recover" and "recovery" are terms of art under the Bankruptcy Code:

> Generally speaking then, property 'recovered' under the Bankruptcy Code necessarily excludes property which the debtor plainly owned when he commenced his case. This distinction is also consistent with general English usage of forms of the word 'recover' – which connotes a *re*-claiming or *re* capturing of something previously *lost*.

*Id.* at *2. Applying those principles to the Thompson & Peck stock, which had been sold for $275,000, and the MJCC property, which had been sold for $15,000, the court concluded that "[u]nder no circumstances" could the [Thompson & Peck] stock be viewed as a "recovery" since it "had never *left* the estate . . . ." *Id.* at *3. In the words of the court, Special Counsel's "legal work facilitated the Trustee's *sale* of the [stock,] thereby liquidating that stock interest into a cash asset of the estate . . . . [I]t was a sale of estate property pure and simple." *Id.* On the other hand, because "[n]either the entity MJCC nor any of the Properties were legally the Debtor's property on the Petition Date," the sale of the MJCC property could be viewed as "tantamount to a 'recovery,'" and thus fell within the Order. *Id.* at *3. Accordingly, the court fixed special counsel's legal fees at $5,000 – namely, one-third of the $15,000 attributed to the MJCC property. *Id.* at *4.

## II.

All parties agree that the principal issue for the Court is whether the Bankruptcy Court's interpretation of the words "amounts recovered" in its Order was proper. For if that was a proper interpretation, then all agree that the fee due the Special Counsel is $5,000, and if it was improper, all agree that the case must be remanded to the Bankruptcy Court to determine the proper fee. Furthermore, despite language in court opinions to the effect that this Court's review of fee awards

3

is for abuse of discretion, *see, e.g.*, *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.)*, 210 B.R. 19, 23 (B.A.P. 2d Cir. 1997), all concerned also agree that this Court should review *de novo* the Bankruptcy Court's construction of the terms of the Order. Assuming (without deciding) that *de novo* review is appropriate, the Court is nonetheless fully satisfied that the Bankruptcy Court properly interpreted and applied its Order to the particular facts of this case.

While Special Counsel urges a broad construction of the phrase "amounts recovered," the Bankruptcy Court surely did not err in construing its Order to be consistent with the concept of "recovery" as that term is used in the Bankruptcy Code. Even outside of bankruptcy, the word "recovery" means the "regaining or restoration of something lost or taken away" or the "obtaining of a right to do something (esp. damages) by a judgment or decree" or "[a]n amount awarded or collected from a judgment or decree." *Black's Law Dictionary* 1280 (7th ed. 1999). Random House Webster's Unabridged Dictionary defines the term "recover" to mean "to get back or regain" or in law, "to obtain by judgment," and the word "recovery" as the "regaining of or the possibility of regaining something lost or taken away." *Random House Webster's Unabridged Dictionary* 1613 (2d ed. 2005). Accordingly, the Bankruptcy Court did not err in deciding that the phrase "amounts recovered" in the Order "excluded property that the debtor plainly owned when he commenced this case." *In re Flanagan*, 2007 WL 3102175, at *2.

It is undisputed that Special Counsel never, in the words of the Order, initiated any litigation "with regard to the determination of ownership of property, . . . the recovery of property for the estate [or] the recovery of improper post-petition transfers." Moreover, as the Bankruptcy Court noted, the fee application does not "describe or otherwise reveal any property *recovered* for the estate." *Id.* (quotation marks and alterations omitted). Instead, as Special Counsel acknowledged at oral

4

argument, he provided the Trustee with counsel and assistance in connection with the protection and preservation of the Thompson & Peck stock as against the other co-owner of the insurance agency.[2]

The Court has no doubt that those services were valuable to the Trustee. As the Bankruptcy Court put it, "No doubt [Special Counsel's] legal work facilitated the Trustee's sale of the bankruptcy estate's interest . . . in Thompson & Peck for $275,000 . . . ." *Id.* at *3. But that legal work did not entail initiation of litigation to *recover* property for the estate in any common (or bankruptcy) sense of the word "recover." Indeed, Special Counsel was candid enough to acknowledge at oral argument that the Trustee obtained the debtor's Thompson & Peck stock certificates within a short time after conversion to Chapter 7 and with little effort on Special Counsel's part. The Bankruptcy Court was, therefore, right to conclude that Special Counsel's efforts – as laudable as they may have been – cannot properly be viewed as "recovery" of property for the estate within the meaning of the Order.

It would appear to this Court that Special Counsel's work for the Trustee differed from the scope of work contemplated by the Bankruptcy Court, as reflected in its Order. In effect, therefore, Special Counsel urges the Court to overlook that fact and ensure that he gets paid because his services were requested by the Trustee, focused on the stock and the MJCC property, and benefitted the estate. Once again, the Court does not doubt the benefit that Special Counsel may have provided the estate. Nor does the Court doubt that changing circumstances may require modifications in the nature of the work expected of any special counsel. But, from the point of view of good order and policy – if nothing else – it makes eminent sense for the Bankruptcy Court to insist that the Trustee or Special Counsel return to that court for additional approval if they wish to change or enlarge the

---

[2] There is no dispute about the Bankruptcy Court's resolution of the MJCC property and therefore the Court need not address it.

scope of the Special Counsel's assignment. A party to the proceeding might object to the augmented or changed scope as inappropriate; after all, the Trustee is a lawyer and perhaps she should have been able to provide on her own the legal services that she asked Special Counsel to provide. Or a party might ask that the terms of the representation be altered or conditioned in some way or that Special Counsel provide a discount or provide services at a flat rate rather than an hourly rate. Yet none of that is possible if the Trustee and Special Counsel take it upon themselves unilaterally to alter the terms of a court's authorization.

Special Counsel worries that counsel might be required constantly to seek new court approvals as his tasks change in response to modified conditions. But even if that concern is a legitimate one as an abstract matter, it is surely exaggerated under the facts of this case. For the Court sees no reason why an order could not have been fashioned that would have expressly covered Special Counsel's work in preserving and protecting the Thompson & Peck stock and advising the Trustee in connection with her service on the board of directors of the insurance agency. Certainly there was no emergency that required Special Counsel to act without court approval. Therefore, the Court concludes that the Bankruptcy Court properly construed the Order and applied it to the facts of this case.

That said, there appears to be no question that Special Counsel acted in reliance on the Trustee, that he believed that his work was encompassed by the terms of the Order and that his work provided benefit to the estate. The Court notes that § 328(a) of the Bankruptcy Code provides as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions . . . . Notwithstanding such terms and conditions, the court may allow

> compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a) (2006). On remand, Special Counsel will be able to move under § 328 (or any other provision of the Bankruptcy Code) for additional compensation, and the Bankruptcy Court should consider whether that provision and the particular circumstances of this case provide the court with authority and justification to allow Special Counsel to recover some or all of his fees above the $5,000 previously ordered.

One other issue requires comment. Special Counsel argued before this Court that neither Cadle Company nor John C. Flanagan had standing to object to his fee application because the estate was administratively insolvent and therefore neither creditor had any stake in the outcome of his fee application. Special Counsel raised this issue in passing below but told the Bankruptcy Court that it might be "premature" to find that the estate was administratively insolvent. Appellant's Appendix [doc. # 11] at A-68 (page 30) ("I think we're a little premature on that."). Furthermore, all concerned agree that the Bankruptcy Court had an independent duty to adjudicate the fee application even if no one objected to it.

It is not possible for this Court to determine from the record before it whether the estate is administratively insolvent and the Bankruptcy Court certainly made no such findings. Therefore, even if, as Special Counsel argues, an unsecured creditor lacks standing to object to a fee application when a debtor was administratively insolvent – an issue this Court does not decide – there is no basis in the present record for the Court to conclude that the estate was, or now is, administratively insolvent. This is especially true since the Court understands that there are continuing proceedings

7

in this bankruptcy. On remand, however, if Special Counsel seeks recovery under § 328 or some other provision of the Bankruptcy Code and Cadle Company or John C. Flanagan continue to object, the Bankruptcy Court should determine whether they have standing to do so.

### III.

The decision of the Bankruptcy Court is affirmed and this case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: May 6, 2008.**